# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

RENEE TOLBERT-TAYLOR,

        Plaintiff,

v.                                                                           No. CV 19-195 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Renee Tolbert-Taylor's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* (the "Motion"), (Doc. 18), filed August 7, 2019; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 25), filed November 15, 2019; and Ms. Tolbert-Taylor's *Reply in Support of Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* (the "Reply"), (Doc. 28), filed December 9, 2019.

Ms. Tolbert-Taylor filed applications for disability insurance benefits and supplemental security income on February 6, 2015. (Administrative Record "AR" 253-254). In her applications, Ms. Tolbert-Taylor alleged disability beginning May 28, 2013. (AR 399, 401). Ms. Tolbert-Taylor claimed she was limited in her ability to work due to depression, panic attacks, high blood pressure, spurs, pain in her stomach, arthritis, high cholesterol, and anxiety. (AR 423). Ms. Tolbert-Taylor's applications were denied initially on August 17, 2015, and upon reconsideration on June 6, 2016. (AR 268, 301-302).

At Ms. Tolbert-Taylor's request, a hearing was held on August 3, 2017, before Administrative Law Judge ("ALJ") Raul Pardo. (AR 131, 112-113). Ms. Tolbert-Taylor and Sandra Trost, an impartial vocational expert ("VE"), testified at the hearing, and Ms. Tolbert-Taylor was represented by her attorney at the time, Donovan Roberts. (AR 131). On January 30, 2018, the ALJ issued his decision, finding Ms. Tolbert-Taylor not disabled at any time between her alleged onset date, May 28, 2013, through the date of his decision. (AR 123). Ms. Tolbert-Taylor requested review by the Appeals Council, (AR 398), which was denied, (AR 1-2), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Ms. Tolbert-Taylor, presently represented by attorney Laura Johnson, (Doc. 20), argues in her Motion that the following errors require reversal: (1) the Appeals Council incorrectly determined that newly submitted evidence did not have a reasonable probability of changing the outcome of the ALJ's decision, (Doc. 18 at 8-13); (2) the ALJ failed to incorporate the State Agency psychological consultants' limitations into his residual functional capacity ("RFC") or explain why such limitations were omitted, despite having given "great weight" to their opinions, (Doc. 18 at 13-18); (3) the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of treating psychiatrist Kimothi Cain, M.D., (Doc. 18 at 22); and (4) the ALJ failed to provide adequate reasons for rejecting the opinion of psychological consultative examiner John Owen, Ph.D., (Doc. 18 at 22-24).

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ committed the harmful error of giving great weight to State Agency psychological opinions without incorporating all of their limitations or explaining the

omission of some limitations, the Court finds that Ms. Tolbert-Taylor's Motion should be **GRANTED**, and this matter shall be **REMANDED** to the Commissioner for additional proceedings consistent with this opinion.

I.     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2018), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration made)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2015); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity;" (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal

one of the "listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-iv) (2012); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in her past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant can perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Ms. Tolbert-Taylor filed an application alleging she was limited in her ability to work due to depression, panic attacks, high blood pressure, spurs, pain in her stomach, arthritis, high cholesterol, and anxiety. (AR 423). At step one, the ALJ determined that Ms. Tolbert-Taylor had not engaged in substantial gainful activity since May 28, 2013, the alleged disability onset date. (AR 115). At step two, the ALJ found Ms. Tolbert-Taylor had the following severe impairments: anxiety, depression, cervical degenerative disc disease, mild carpal tunnel syndrome, and foot pain. (AR 115). At step three, the ALJ determined that Ms. Tolbert-Taylor's impairments did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. 416.920(d), 416.925, and 416.926 (2017). (AR 116).

Also at step three, the ALJ found that Ms. Tolbert-Taylor had the following RFC: she was limited to performing light work, requiring occasional lifting and/or carrying 20 pounds, frequent lifting and/or carrying 10 pounds, and sitting, standing and/or walking

---

1. 20 C.F.R. pt. 404, subpt. P, app. 1.

for six hours in an eight-hour workday. (AR 117). She was further restricted to frequent reaching and handling with both hands; occasional climbing of ramp or stairs, but never ladders, ropes or scaffolds; occasional stooping; no work around unprotected heights; simple, routine tasks and occasional contact with the public; and her off-task time could be accommodated by normal breaks. *Id.*

In formulating Ms. Tolbert-Taylor's RFC, the ALJ stated that he considered Ms. Tolbert-Taylor's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 117). The ALJ also stated that he considered opinion evidence consistent with the requirements of 20 C.F.R. § 404.1527. *Id.* The ALJ concluded that some of Ms. Tolbert-Taylor's impairments could be expected to cause her alleged symptoms, but he found that the intensity, persistence, and limiting effects Ms. Tolbert-Taylor described were not entirely consistent with the evidence in the record. (AR 119-120).

In evaluating the medical evidence in the record, the ALJ considered and assigned weight to the medical opinions. Of the relevant opinions, the ALJ gave "great weight" to the State Agency psychological consultants' opinions, Alvin Smith, Ph.D., and Keith McKee, Ph.D. (AR 121). The ALJ gave "partial weight" to the opinion of Ms. Tolbert-Taylor's treating psychiatrist, Kimothi Cain, M.D. (AR 120-121). The ALJ also gave "partial weight" to the opinion of psychological consultative examiner John Owen, Ph.D. (AR 120).

Relying on VE testimony, at step four the ALJ found that Ms. Tolbert-Taylor was not able to perform her past relevant work as an office manager or general clerk. (AR 121). At step five, the ALJ found that considering Ms. Tolbert-Taylor's age, education,

work experience and her assessed RFC, she could perform other work as a marker, (Dictionary of Occupational Titles ("DOT") 209.587-034), and photocopy machine operator, (DOT 207.687-014). (AR 122). After finding that Ms. Tolbert-Taylor was capable of performing other work, the ALJ concluded she was "not disabled," as defined by 20 C.F.R. §§ 404.1520(g) and 416.920(g), and ended his analysis at step five. (AR 123).

After the hearing, Ms. Tolbert-Taylor submitted additional evidence to the Appeals Council as part of her request to review the ALJ's decision. (AR 7-90, 94-104, 398). The evidence contained treatment notes from the University of New Mexico ("UNM") Hospitals and Clinics dated March 7, 2016 through May 14, 2018, (AR 13-90); treatment records from Rio Abajo Family Clinic dated September 2, 2006 through September 14, 2007, (AR 238-252); a July 2018 statement from Gerry Tolbert, (AR 8); and a June 2018 opinion statement from Michelle Bardack, M.D., Ms. Tolbert-Taylor's treating primary care provider. (AR 10-11). In its January 8, 2018 denial of review, the Appeals Council indicated that except for UNM Hospital and Clinic notes dated February 19, 2018 to May 14, 2018, it found the records "did not show a reasonable probability that it would change the outcome of the decision." (AR 2). With respect to the UNM Hospital and Clinic notes dated February 19, 2018 to May 14, 2018, the Appeals Council wrote that this "additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 30, 2018." (AR 2). As a result, the Appeals Council refused to consider the additional evidence Ms. Tolbert-Taylor submitted and affirmed the ALJ's denial of her claim for disability benefits.

7

**IV. Analysis**

Ms. Tolbert-Taylor presents four arguments in her Motion before the Court. She argues: (1) the Appeals Council incorrectly determined the newly submitted evidence did not have a reasonable probability of changing the outcome of the ALJ's decision, (Doc. 18 at 8-13); (2) having given great weight to Dr. McKee's opinion, the ALJ failed to incorporate all of Dr. McKee's stated limitations into the RFC or explain why some limitations were omitted, (Doc. 18 at 13-18); (3) the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Cain, (Doc. 18-22); and (4) the ALJ failed to provide adequate reasons for rejecting the opinion of psychological consultative examiner Dr. Owen. (Doc. 18 at 22-24). Without these errors, Ms. Tolbert-Taylor posits that a more restrictive RFC would have resulted, and because a more restrictive RFC would have prompted an outcome change, these errors were harmful and reversible. (Doc. 18 at 13, 18, 22, 24).

In response, the Commissioner argues the Appeals Council reasonably concluded that the post-hearing evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision. (Doc. 25 at 22-25). Further, the Commissioner contends that the ALJ's failure to incorporate all the limitations from Dr. McKee's opinion is a harmless error because the omitted limitations are consistent with the jobs identified in step five. (Doc. 25 at 16). Finally, with respect to Dr. Owen's and Dr. Cain's opinions, the Commissioner maintains that the ALJ reasonably discounted their opinions. (Doc. 25 at 12-16).

*A.    Appeals Council Review*

After the ALJ issued his decision, Ms. Tolbert-Taylor submitted additional evidence to the Appeals Council in support of her disability claim. The records included

a June 2018 medical source statement authored by Dr. Bardack, Ms. Tolbert-Taylor's primary care provider. (AR 10-11); (Doc. 18 at 8-14); (Doc. 25 at 22-25). In her statement, Dr. Bardack opined that Ms. Tolbert-Taylor was limited to lifting and carrying less than 5 pounds; standing and/or walking less than two hours in an eight-hour workday; periodic alternating positions from sitting to standing; occasional operation of foot controls with her right and left feet; and occasional reaching, fingering, keyboarding, kneeling, stooping, crouching, and crawling. (AR 10). With respect to her mental restrictions, Dr. Bardack opined that Ms. Tolbert-Taylor had moderate limitations in all outlined mental tasks. (AR 11). Dr. Bardack explained that her opinion was based on records and observations, including the diagnosed impairments of post-traumatic stress disorder ("PTSD") and schizophrenia, and observable symptoms of emotional lability and persistent agoraphobia. (AR 10-11).

In the Appeals Council's review of the ALJ's decision, it found that Dr. Bardack's opinion "does not show a reasonable probability that it would change the outcome of the decision." (AR 2). As a result, the Appeals Council chose not to "exhibit the evidence." *Id.* Ms. Tolbert-Taylor now argues that Dr. Bardack's opinion would change the outcome of the decision because it is more limiting than the ALJ's RFC and with these additional limitations, it would preclude her ability to work. *See* (AR 11-12). In response, the Commissioner contends that the Appeals Council was not required to explain why the new evidence, including Dr. Bardack's opinion, did not change the outcome of the ALJ's decision. (Doc. 25 at 23). Instead, the Commissioner argues that as part of the Court's *de novo* analysis it "must determine whether Dr. Bardack's opinion renders the ALJ's decision unsupported by substantial evidence." *Id.* Specifically, the Commissioner asserts that Dr. Bardack's opinion is unsupported by her treatment history with Ms.

9

Tolbert-Taylor, her treatment notes, and her limitations, which are more restrictive than alleged by Ms. Tolbert-Taylor. *Id.* at 23-25.

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). When evaluating a medical opinion that has not been considered by the ALJ "[t]he district court's only option [is] to conduct a substantial-evidence review by assessing the entire agency record, including [the] never-before assessed opinion." *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017) (*Vallejo I*) (alterations made) (citing *O'Dell*, 44 F.3d at 858-59). The Appeals Council "will review a case if…it receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability the evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970 (a)(5), 416.1470(a)(5) (2017).

Evidence is new "if it is not duplicative or cumulative." *Threet*, 353 F.3d at 1191. Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ, i.e., the period on or before the date of the ALJ's decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). Presently, both parties concede that Dr. Bardack's opinion is both new and chronologically pertinent. (Doc. 25 at 22); (Doc. 18 at 9, 12).

The parties' central argument hinges on whether Dr. Bardack's opinion is material, and thus should have been reviewed by the Appeals Council. Under the prior regulations, evidence was considered material "if there [was] a reasonable *possibility* that it would have changed the outcome." *Threet*, 353 F.3d at 1191 (emphasis added) (brackets and quotation omitted). Under the current regulations, a claimant must show

10

that "there is a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (emphasis added). While the "reasonable probability" requirement is presented in the new regulations as a separate element for establishing Appeals Council review, courts have historically construed this clause to serve as a requirement for proving materiality. *Compare* 20 C.F.R. § 416.1470(a)(5) (2017) (requiring additional evidence to be both "material" *and* present a "reasonable probability" of changing the outcome) *with Threet*, 353 F.3d at 1191 (defining materiality as the evidence possessing "a reasonable possibility that it would have changed the outcome"). In the District of New Mexico, this change has been interpreted to "heighten[] the claimant's burden to prove materiality . . . ." *Bisbee v. Berryhill*, No. 18-cv-0731 SMV, 2019 WL 1129459, at *3 n.5 (D.N.M. Mar. 12, 2019); *see also Casias v. Saul*, No. 1:18-CV-00537 LF, 2019 WL 4013890, at *3 (D.N.M. Aug. 26, 2019) (same).

Regardless of whether the new regulation is understood as amending the definition of materiality or adding a separate requirement for establishing Appeals Council review, the outcome in this case is the same. The evidence fails to satisfy the more stringent standard of possessing a reasonable probability that it would change the outcome of the ALJ's decision, and therefore, the Appeals Council's denial of review should be affirmed. As a result, the Court will not attempt to reconcile the competing definitions of materiality, or whether the new regulations alter the definition of materiality as proffered by the Tenth Circuit.

The Commissioner levies several persuasive arguments against Dr. Bardack's opinion to prove her findings would not render the ALJ's decision unsupported by substantial evidence. (Doc. 25 at 23). First, the Commissioner asserts Dr. Bardack's

11

opinion is unsupported by her treatment history with Ms. Tolbert-Taylor. The Commissioner acknowledges that while Dr. Bardack was Ms. Tolbert-Taylor's long-term treating physician, which would entitle her opinion more weight, (20 C.F.R. § 404.1529 (c)(2)(i)),[2] there are no treatment notes in the record indicating that she saw Ms. Tolbert-Taylor after February 2017. (Doc. 25 at 24) (citing AR 737-738). According to the Commissioner, "[t]here is thus no contemporaneous evidence that could support her June 2018 opinion." (Doc. 25 at 23). However, contrary to the Commissioner's assertion that the most recent treatment note is dated February 2017, the most recent treatment note is June 2017. (AR 733-736). Notwithstanding his error, the Commissioner's point is well taken—it had been nearly one year since Dr. Bardack had treated Ms. Tolbert-Taylor.

Next, the Commissioner argues that Dr. Bardack's treatment notes did not document limitations consistent with her opinion. (AR 23). For example, in February 2017 Dr. Bardack documented that Ms. Tolbert-Taylor was "healthy appearing" and displayed normal coordination and appropriate affect. (AR 737). Further, at her June 2017 appointment, Ms. Tolbert-Taylor complained of arthritic pain, depression, and anxiety. (AR 733-734). Yet, in her physical examination Dr. Bardack documented that Ms. Tolbert-Taylor was alert, well-groomed and appropriately dressed, had good eye contact, and walked with a normal gait. (AR 743). Similarly, in November 2016 Dr. Bardack documented that Ms. Tolbert-Taylor walked with a normal gait, she was alert, well groomed, had good eye contact, and her mood and affect were congruent. (AR

---

2. This regulation was amended effective March 27, 2017. *See* 82 Fed. Reg. 5871 (Jan. 18, 2017). However, because Ms. Tolbert-Taylor filed her application prior to March 27, 2017, the prior version of this regulation applies to this case.

739). Dr. Bardack documented similar physical and mental findings at prior appointments. *See, e.g.*, (AR 740-741) (August 2016); (AR 745) (April 2016); (AR 747) (March 2016); (AR 751) (October 2015). Dr. Bardack also documented that she had good range of motion in her wrists with intact sensation and motor functioning. (AR 607) (March 2016).

At some appointments, Dr. Bardack documented that Ms. Tolbert-Taylor's mood was depressed, she appeared tearful, and she described periods of self-isolation. *See, e.g.,* (AR 747, 607). Nevertheless, Dr. Bardack's opined mental limitations—moderate limitations in tasks described as "non-physical"—are generally consistent with the ALJ's findings and the ALJ's mental restrictions in the RFC. (AR 11, 116-117). As for physical limitations, the Commissioner has provided evidence that Dr. Bardack's opinion is inconsistent with some of her documented physical findings, her opinion is dated approximately twelve months after her most recent appointment with Ms. Tolbert-Taylor, and her opinion is partially inconsistent with Ms. Tolbert-Taylor's hearing testimony, in which she indicated that she could probably carry ten pounds. (AR 11, 143).

Taken together, the evidence is sufficient to find there is not a reasonable probability that Dr. Bardack's opinion would change the outcome of the ALJ's decision. Therefore, because the evidence does not render the ALJ's decision unsupported by substantial evidence, the Court denies Ms. Tolbert-Taylor's argument that the Appeals Council erred in finding that Dr. Bardack's opinion does not create a reasonable probability that it would change the outcome of the ALJ's decision.

  B.  *The ALJ's Consideration of Dr. McKee's Opinion*

Ms. Tolbert-Taylor next argues that having given great weight to the opinions of State Agency psychologists Dr. Smith and Dr. McKee, the ALJ failed to incorporate all

mental limitations imposed by them—in particular, Dr. McKee's social limitations. (Doc. 18 at 17). In his mental residual functional capacity assessment at the reconsideration level, Dr. McKee opined that Ms. Tolbert-Taylor could understand, remember and carryout at least simple tasks with routine supervision; respond and relate appropriately to supervisors and coworkers on a superficial basis with interactions incidental to work; and not interact with the general public. (AR 300). In the mental residual functional capacity assessment at the initial level, Dr. Smith opined that Ms. Tolbert-Taylor was limited to simple tasks with incidental public contact. (AR 267).

Ms. Tolbert-Taylor highlights several inconsistencies between Dr. Smith's and Dr. McKee's opinions, which were not ameliorated or explained by the ALJ. (Doc. 18 at 16). Further, Ms. Tolbert-Taylor argues the ALJ failed to explain why he did not adopt the additional social limitations imposed by Dr. McKee, specifically limitations on work with coworkers and supervisors and no work with the public. *Id.* at 17-18. Ms. Tolbert-Taylor contends that this is a harmful error because a more restrictive RFC would have resulted in a different outcome for her disability claim. *Id.*

The Commissioner admits that the ALJ committed an error in his analysis of Dr. Smith's and Dr. McKee's opinions, however, he asserts it was a harmless error. (Doc. 25 at 16). The Commissioner reasons this is because "the jobs identified by the vocational expert were consistent with the omitted limitations from Dr. McKee's opinion." *Id.* at 18. Specifically, the Commissioner contends that the two jobs provided by the VE—marker and photocopying machine operator—are consistent with Dr. McKee's added social limitations. The Commissioner asserts that because the jobs are unskilled positions with a special vocational profile ("SVP") of 2, the DOT criteria for these positions do not require public contact. Furthermore, under both jobs as they are

14

outlined in the DOT the activities of "taking instructions" and "helping" are "not significant," and the activities of "talking" and "hearing" are "not present." *Id.* at 19-20.

In support of his argument, the Commissioner cites to *Yotter v. Berryhill*, No. 17-202 CG, 2017 WL 6001765, at 6-7 (D.N.M. Dec. 4, 2017) (unpublished) and *Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016) (unpublished). In *Yotter*, the Court held that the ALJ's failure to incorporate limitations provided by a treating doctor was harmless because the VE testified that with the additional limitations Mr. Yotter could perform the jobs identified. *Yotter*, 2017 WL 6001765, at 17. However, in Ms. Tolbert-Taylor's case there is no VE testimony consistent with Dr. McKee's omitted limitations. In fact, when asked by Ms. Tolbert-Taylor's representative whether Ms. Tolbert-Taylor could perform work if she frequently got into arguments with supervisors, the VE responded that such a limitation was not in the DOT "but I would imagine that [such a person] would not be able to maintain a job." (AR 168) (alteration made).

The Commissioner also cites to *Lane*, in which the ALJ similarly omitted restrictions on contact with supervisors and coworkers despite giving significant weight to the State Agency psychologist's opinion. *Lane*, 643 F. App'x at 768. However, the Court finds *Lane* unpersuasive because in Ms. Tolbert-Taylor's case Dr. McKee's opinion is more limiting than the omitted social limitation in *Lane*, which was "no frequent or prolonged" contact with coworkers and supervisors. *Id.* Rather, Dr. McKee opined that Ms. Tolbert-Taylor was limited to "superficial" and "incidental" contact with supervisors and coworkers. (AR 300). As a result, any argument concerning similar DOT definitions and activities is unavailing in Ms. Tolbert-Taylor's case.

Furthermore, *Lane* is an unpublished opinion, and the Court finds the established law on the issue of harmful error in this context conflicts with the Commissioner's

argument. It is undisputed that when assessing an RFC, the ALJ must explain what weight he assigns to each opinion and why. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).[3] "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration made). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal quotation marks omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Rather, ALJs are required to provide "appropriate explanations for accepting or rejecting such opinions." Social Security Ruling ("SSR") 96-5p,[4] 1996 SSR LEXIS 2, at *13, 1996 WL 374183, at *5. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7.

Contrary to the Commissioner's assertion, this Court has found that similar errors committed by ALJs are harmful and reversible. *See, e.g., Patel v. Berryhill*, No. CV 17-967 CG, 2018 WL 4637367, at *7-8 (D.N.M. Sept. 27, 2018) (unpublished) (remanding the decision because the ALJ failed to explain or incorporate all limitations imposed by the State Agency psychologists despite giving their opinions great weight); *Miller v. Berryhill*, No. CV 16-394 CG, 2017 WL 3588798, at *3–5 (D.N.M. Mar. 2, 2017)

---

3. These regulations apply to this case because Ms. Tolbert-Taylor's applications were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).
4. SSR 96-5p was rescinded for applications filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Ms. Tolbert-Taylor's applications were filed before March 27, 2017, SSR 96-5p applies to this case.

(unpublished) (finding the ALJ committed remandable error where he gave great weight to a consultative examiner's opinion but failed to incorporate or explain why some limitations were omitted); *Chee v. Berryhill*, No. CV 16-1105 CG, 2017 WL 4162263, at *7 (D.N.M. Sept. 18, 2017) (unpublished) (denying the Commissioner's argument that the ALJ did not commit a harmful error in his failure to incorporate all limitations from State Agency opinion evidence, to which great weight was given, despite the contention that the occupations identified by the vocational expert did not involve a significant amount of taking instructions or helping others).

The Commissioner also cites to several opinions from the Eastern District of Oklahoma for the proposition that most unskilled jobs ordinarily involve dealing primarily with objects rather than people. *See Lara v. Colvin*, No. CIV-12-1249-L, 2014 WL 37746, at *4 (unpublished) (citing SSR 85-15, 1985 WL 56857, at *4). Yet, to the contrary, the Tenth Circuit has explained that "[u]nskilled work generally requires …[r]esponding appropriately to supervision, co-workers and usual work situations." *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (citing to SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996) (internal quotation marks omitted)).

In sum, the Court finds that the Commissioner's arguments that the ALJ's error was harmless are tenuous at best. For the reasons described previously, the Court is strained to accept the proposition that all simple work is generally restricted in social limitations, and that the definition "not significant" is commensurate with Dr. McKee's limitation to "superficial" and "incidental" contact with supervisors and coworkers. Moreover, the limitation of "not significant" hardly seems compatible with Dr. McKee's limitation of no public contact. In short, the Court finds that the ALJ's failure to either explain or incorporate Dr. McKee's restrictions on work with coworkers and supervisors

and no public contact is a harmful and reversible error.

**V.   Conclusion**

For the foregoing reasons, the Court finds the ALJ committed a harmful error when he failed to either explain or incorporate all of Dr. McKee's social limitations despite giving his opinion great weight. Because the Court finds this is a harmful error, the Court will not address Ms. Tolbert-Taylor's remaining arguments.

**IT IS THEREFORE ORDERED** that Ms. Tolbert-Taylor's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc. 18), is **GRANTED** and this case is **REMANDED** for additional proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE